Matter of Pierre v ABF Frgt. (2022 NY Slip Op 07118)

Matter of Pierre v ABF Frgt.

2022 NY Slip Op 07118

Decided on December 15, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 15, 2022

534697
[*1]In the Matter of the Claim of Philome Pierre, Claimant,
v
ABF Freight et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:November 18, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Lois Law Firm LLC, New York City (Addison O'Donnell of counsel), for appellants.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for respondent.

Pritzker, J.
Appeal from a decision of the Workers' Compensation Board, filed August 2, 2021, which ruled, among other things, that claimant sustained an accidental injury arising out of and in the course of his employment.
On May 19, 2020 claimant, a freight delivery driver, applied for workers' compensation benefits on the basis of a diagnosis of COVID-19. The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) controverted the claim, contending, among other things, that COVID-19 was not a covered accident within Workers' Compensation Law and that the alleged injury did not occur in the course of claimant's employment. Following an independent medical examination (hereinafter IME) and hearings, a Workers' Compensation Law Judge established the claim, finding that claimant had met his burden of establishing that he had contracted COVID-19 through his employment. Upon administrative review, the Workers' Compensation Board affirmed. The carrier appeals.
We affirm. Initially, the contraction of COVID-19 in the workplace "reasonably qualif[ies] as an unusual hazard, not the natural and unavoidable result of employment" and, thus, is compensable under the Workers' Compensation Law (Matter of Johannesen v New York City Dept. of Hous. Preserv. & Dev., 84 NY2d 129, 137 [1994] [internal quotation marks, brackets and citation omitted]; see Matter of Middleton v Coxsackie Correctional Facility, 38 NY2d 130, 135-136 [1975]; Matter of McDonough v Whitney Point Cent. School, 15 AD2d 191, 192-193 [3d Dept 1961]).
"Whether a compensable accident has occurred is a question of fact to be resolved by the Board and its determination will not be disturbed when supported by substantial evidence" (Matter of Leon v Monadnock Constr. Inc., 208 AD3d 1415, 1415 [3d Dept 2022] [internal quotation marks and citations omitted]; accord Matter of Vasquez v Northstar Constr. Group Servs. Inc., 205 AD3d 1250, 1251 [3d Dept 2022]). "Substantial evidence is a minimal standard and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Vaughan v Heritage Air Sys., Inc., 208 AD3d 1562, 1564 [3d Dept 2022] [internal quotation marks and citations omitted]). "In this regard, the claimant bears the burden of establishing that the subject injury arose out of and in the course of his or her employment and, further, must demonstrate, by competent medical evidence, the existence of a causal connection between his or her injury and his or her employment" (Matter of Minichino v Amazon.com DEDC LLC, 204 AD3d 1289, 1291 [3d Dept 2022] [internal quotation marks and citations omitted]). "The concept of time-definiteness required of an accident can be thought of as applying to either the cause or the result, and it is not decisive that a claimant is unable to pinpoint the exact date on which the incident occurred" (Matter of Connolly v Covanta Energy Corp., 172 AD3d 1839, 1841 [3d Dept 2019] [internal [*2]quotation marks, brackets, ellipsis and citations omitted]).
After being out of work on certain days in the beginning of March 2020 with an upper respiratory infection, claimant returned to work on April 2, 2020. On that day, claimant left the facility to make deliveries and was then instructed to return because the facility would be temporarily closing. According to claimant, there had been a "major infection [of COVID-19] at the plant." The facility was set to reopen on April 10, 2020, following sanitization. In the meantime, claimant began to display symptoms and, on April 6, 2020, was diagnosed with COVID-19. Claimant's symptoms worsened, culminating in his hospitalization from April 15, 2020 until April 23, 2020. While the testimony was unclear as to exactly how many employees contracted COVID-19 during this time, the record demonstrates that numerous other employees had and that one had passed away as a result thereof. The union shop steward testified that approximately seven people had reported to him that they had contracted COVID-19. The employer's operations manager testified that, while only two employees submitted paperwork, the shop steward would have a better idea of how many individuals had contracted COVID-19 because he had a "direct line" with employees. Prior to the shutdown, there was no requirement that employees wear personal protective equipment and the breakroom continued to be utilized with multiple people in the room at any given time. Additionally, meetings continued to be held in the breakroom with approximately 15 to 20 individuals two to three times per week. Although claimant wore a mask to and from work, he had the mask on and off while in the breakroom with other employees. Claimant testified that, during this time, he did not attend any social gatherings, did not go to the store or restaurants or use public transportation, and had contact with no individuals outside of work other than his wife and son, with whom he lived. Marc Parnes, claimant's physician, testified that the symptoms claimant displayed — high blood pressure, chest pain, lung damage as well as tingling and numbness in his left arm — were related to the COVID-19 that he had contracted during his employment. Warren Silverman, who performed claimant's IME, opined that there was sufficient evidence to demonstrate that claimant had contracted COVID-19, yet it was impossible to determine specifically where this had occurred. In this regard, Silverman was only able to determine that claimant had contracted COVID-19 "somewhere in Brooklyn, New York," therefore encompassing both claimant's home and his workplace.
In view of the foregoing, according the Board broad discretion in assessing the credibility of medical witnesses with regard to the issue of causation (see Matter of Guna v Delta Airlines, Inc., 202 AD3d 1190, 1191 [3d Dept 2022]), substantial evidence supports the Board's conclusion that claimant had contracted COVID-19 in the course of his employment [*3]and therefore his injuries arose out of and in the course of his employment (see Matter of Connolly v Covanta Energy Corp., 172 AD3d at 1841; Matter of Wilson v Yonkers Raceway/Empire City, 126 AD3d 1260, 1261 [3d Dept 2015]; Matter of Brush v New York Univ. Med. Ctr., 144 AD2d 142, 143-144 [3d Dept 1988]; compare Matter of Donato v Taconic Corr. Facility, 143 AD3d 1028, 1030 [3d Dept 2016]). We have reviewed the remaining contentions and find them to be without merit.
Egan Jr., J.P., Clark, Ceresia and Fisher, JJ., concur.
Ordered that the decision is affirmed, without costs.